UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
JANE DOE,

                Plaintiff,

  -against-

LOS TRES POTRILLOS RESTAURANT BAR INC.
JUAN CARLOS LUNA and MARIO VALDEZ,
individually,

                Defendants.
-------------------------------------------------------------------X

**Civ. No.**

**COMPLAINT**

**(JURY TRIAL DEMANDED)**

Plaintiff, JANE DOE ("Plaintiff" or "Jane Doe"), by and through her attorneys, L & D LAW P.C, complaining of Defendants, jointly and severally, herein respectfully shows to this Court and alleges the following:

## NATURE OF THE CASE

1. This is an action to remedy discrimination based on gender discrimination, sexual harassment, retaliation and wrongful termination is brought by Plaintiff Jane Doe pursuant to the provisions of the Civil Rights Act of 1866, and pursuant to Article I, §11 of the New York State Constitution for the violation of her due process and other constitutional rights to be free from gender discrimination, sexual harassment, retaliation and wrongful termination.

2. Plaintiff also complains pursuant to Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C § 2000e et. Seq. ("Title VII"), and to remedy violations of the laws of the State of New York, based upon diversity and the supplemental jurisdiction of this Court pursuant to <u>Gibb</u>, 38 U.S. 715 (1966) and 28 U.S.C. § 1367, seeking relief and damages to redress the injuries Plaintiff has suffered as a result of being sexually harassed, discriminated and retaliated against by her employer on the basis of gender discrimination sexual harassment, retaliation and wrongful termination inflicted upon

1

Plaintiff by Defendants.

## JURISDICTION AND VENUE

3. Jurisdiction of this Court is proper under 42 U.S.C. § 2000e-5(f)(3), and 28 U.S.C. §§ 1331 and the Civil Rights Act of 1866 and 1871 which give this Court jurisdiction for each statute; the damages; exclusive of interest and costs in this instance exceed that of all lower courts, and this Court's pendent jurisdiction is also invoked.

4. The unlawful employment practices alleged herein occurred wholly or in part, in the jurisdiction of the Eastern District of New York.

## JURY DEMAND

5. Plaintiff hereby demands a trial by jury on all issues properly triable thereby.

## PARTIES

6. Plaintiff Jane Doe is an individual woman who resides in the State of New York, Queens county.

7. Defendant, LOS TRES POTRILLOS RESTAURANT BAR INC is a Domestic Business Corporation with a corporate office for the purpose of business transaction incorporated in the State of New York. The causes of action in this case arise within the County and City of New York.

8. At all times material, LOS TRES POTRILLOS RESTAURANT BAR INC. is located at 1004 4th Ave Brooklyn, New York, 11232.

9. At all times material, Plaintiff was a full-time employee in the position of waitress.

10. At all times material, Juan Carlos Luna (hereinafter referred to as "Carlos") was and is a supervising employee with LOS TRES POTRILLOS.

11. At all times material, Carlos had direct supervisory authority over Plaintiff Jane Doe's employment which included but was not limited to the ability to hire and fire along with other tangible employment actions.

12. At all times material, (hereinafter referred to as "Valdez") was and is a managing employee with LOS TRES POTRILLOS.

13. At all times material, Valdez had direct supervisory authority over Plaintiff Jane Doe's employment which included but was not limited to the ability to hire and fire along with other tangible employment actions.

## FACTS

14. On or about, February 28, 2019, Plaintiff Jane Doe began her employment as a waitress.

15. Plaintiff Jane Doe was talented in her position and always worked tirelessly to ensure that each work-related task was completed assiduously and on time.

16. During Plaintiff's employment at Defendant LOS TRES POTRILLOS, Plaintiff went out for coffee two or three times with Defendants' Supervisor Carlos.

17. On or about May 16, 2019 Defendants' Supervisor Carlos invited Plaintiff out to a dinner.

18. On or about May 16, 2019, after dinner, Defendants' Supervisor Carlos was driving the Plaintiff to her house.

19. Plaintiff does not remember exactly where Defendants' Supervisor Carlos was parked, but upon information and belief, it was on the side of the road.

20. Defendants' Supervisor Carlos and Plaintiff were talking in the car at which time they began to kiss.

21. At one-point, Defendant Carlos' actions made the Plaintiff feel extremely uncomfortable. As a result, Plaintiff told Defendants' Supervisor Carlos, point blank, **to "stop" and "go home."** However, Defendants' Supervisor Carlos forcefully grabbed the back of Plaintiff's neck and forced her head to his crotch area. Carlos then forced the Plaintiff to perform oral sex against her will.

22. The foregoing events left the Plaintiff in shock and Plaintiff is unsure of the amount of

time that passed. However, after releasing the Plaintiff from his grip, Carlos forced his way into the passenger seat where Plaintiff was and Defendants' Supervisor Carlos placed all of his weight on top of the Plaintiff, thus preventing her from moving.

23. Defendant's Supervisor Carlos forcefully began ripping off Plaintiff's jeans and her underwear, groping her over and over again, even as Plaintiff repeatedly told him that she did not want him to take off her clothes.

24. Once Defendant's Supervisor Carlos had forcefully removed the Plaintiff's clothes, he tried to vaginally penetrate the Plaintiff.

25. Plaintiff froze and at one point she was completely motionless. Carlos' actions left the Plaintiff in shock, horror and in a catatonic state. It was only after Carlos' predatory sexual assault against the Plaintiff, did he finally stop and ask the Plaintiff if she was "ok."

26. Plaintiff mustered all the courage she could and replied that she was not ok at all. Defendants' Supervisor Carlos then moved back to the driver's seat and asked the Plaintiff to forgive him for what he had done.

27. After Defendants' Supervisor Carlos forced himself onto Plaintiff, Plaintiff did not have contact with Carlos again for about a month and tried to keep as far away from Carlos as she could.

28. At or around this time period, Plaintiff was working in or around six days a week.

29. On or about June 18, 2019, Defendant's Supervisor Carlos ordered the Plaintiff to the bar section to engage the Plaintiff in *quid pro quo* sexual harassment. Carlos ordered the Plaintiff to have sex with him again and that if Plaintiff did not agree, he wanted nothing to do with her, she would have an extremely hard time at work and would face termination.

30. At that moment, Carlos' actions left the Plaintiff in a desperate and fearful situation,

because regardless of what Defendants' Supervisor Carlos had done to the Plaintiff, the Plaintiff could not afford to leave her job.

31. Plaintiff's job provided her with financial stability and was the only means by which Plaintiff could support herself.

32. Furthermore, the Plaintiff had witnessed and was a part of several other unlawful and/ sexually charged incidents while working at the Defendant's place of business, which contributed to the hostile work environment and made it unbearable.

33. For example, during the time that the Plaintiff was working at Defendant Los Tres Potrillos, Plaintiff witnessed a lot fighting and the selling of drugs.

34. In addition, in or around November of 2019, a patron brought an intoxicated woman to Defendant Los Tres Potrillos premises and sexually assaulted her at one of tables, where management sat idly by and watched, until other employees complained including the Plaintiff.

35. The Manager, Mario Valdez, and a waitress named Kelly were also present when this occurred. As a result of the above incident, the police were notified and Defendants failure to prevent the assault left the Plaintiff in state of shock and horror.

36. Furthermore, upon information and belief, all the waitresses were suffering some sort of sexual harassment either from the managers including Defendant's Supervisor Carlos.

37. For example, in or around late August of 2019, when a patron was sexually harassing the Plaintiff, she immediately complained to Defendant's Manager Mario Valdez.

38. However, instead of addressing the unlawful harassment or taking any preventative measures, Defendants Manager Valdez instead decided to scold the Plaintiff and ordered her to get back to her tables/work and took no steps to prevent the harassment.

39. Upon information and belief, Defendants' Manager Valdez was also forcefully

5

touching other waitresses which was contributory to the Plaintiff's hostile work environment.

40. Although Defendant's Manager Valdez never physically touched the Plaintiff, he would frequently make lewd and sexually charged remarks to the Plaintiff.

41. For example, in or around November of 2019, Defendant's Manager Valdez told the Plaintiff "**Right in the begging (beginning), back in February, when you started work, you had a happy ass and now it just wasn't the same way.**"

42. Defendant's Manager Valdez further told the Plaintiff, "**After client has children her hips will get juicier than before, because she doesn't have boobs.**"

43. In addition to the sexual harassment the Plaintiff was facing from Defendant's Supervisor Carlos and the unlawful remarks from Defendant's Manager Valdez; the quarrels, fighting and mistreatment that Plaintiff was subjected to by management only added to the severe and pervasive work environment.

44. The Plaintiff was no longer eating at her place of employment and felt a constant desire to cry.

45. On or about December 6, 2019, the Defendants' actions had taken an unprecedented toll on the Plaintiff which left the Plaintiff bed-ridden, ill looking and deflated of all self-esteem.

46. The Plaintiff decided that the best thing was remove herself from the sexually charged and hostile work environment by taking an evening off.

47. The Plaintiff contacted her Supervisor at the time, Yolanda, who never replied to the Plaintiff. Plaintiff then texted another Supervisor, Mario, who also did not reply to the Plaintiff. Finally, Plaintiff contacted Pedro Luna, a Supervisor who is also Yolanda's son. Upon hearing Plaintiff's request, Pedro Luna told the Plaintiff to take a week off instead of coming in for her following shift.

48. On or about December 9, 2019, immediately after Plaintiff made numerous protected complaints, and after Defendants subjected the Plaintiff to a litany of unlawful comments and conduct, Defendant's Manager Valdez told the Plaintiff to look for another job because Defendants LOS TRES POTRILLOS no longer required Plaintiff's services, effectively terminating her employment.

49. As a result of the above actions perpetrated intentionally by Defendants' Supervisor Carlos and the litany of actions by staff and management of LOS TRESS POTRILLOS, Plaintiff Jane Doe began suffering from panic attacks and had trouble eating.

50. As a further result of Defendants' conduct, Plaintiff Jane Doe was left in a state of depression and felt hopeless.

51. On account of the Defendants' sexual assault against the Plaintiff, Plaintiff Jane Doe decided to file a criminal complaint against Carlos. Plaintiff is currently still awaiting the results of the police investigation and report; which will be made available to the Court upon request and under confidentiality.

52. As a result of Defendant's actions, Plaintiff Jane Doe felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

53. As a result of Defendant's discriminatory and intolerable treatment, Plaintiff Jane Doe suffered and continues to suffer severe emotional distress.

54. As a result of the acts and conduct complained of herein, Plaintiff Jane Doe has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails.

55. Plaintiff Jane Doe has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

56. Plaintiff Jane Doe further suffers from panic attacks and cannot sleep at night on account of Defendant's discriminatory and retaliatory conduct.

57. As Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff Jane Doe demands Punitive Damages against Defendant.

58. The above is just some of the examples of unlawful and discriminatory conduct to which Defendants subjected Plaintiff Jane Doe.

59. Plaintiff Jane Doe suffered and will continue to suffer anxiety, depression, and significant emotional distress, as a direct result of Defendant's Supervisor Carlos's sexual assault, sexual harassment and discrimination.

60. Defendants' actions and conduct were intentional and intended to harm Plaintiff.

61. As a result of Defendants' Supervisors actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

62. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non- pecuniary losses. Plaintiff has further experienced severe emotional distress.

63. As a result of the above, Plaintiff has been damaged in an amount which exceeds the jurisdiction of all lower Courts.

    As Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law. As such, the Plaintiff demands Punitive Damages as against all the Defendants, jointly and severally.

## AS AND FOR A FIRST CAUSE OF ACTION
## DISCRIMINATION UNDER TITLE VII
## (Not Against Individual Defendants)

64. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

65. Title VII states in relevant part as follows:

    (a) Employer practices:

    It shall be an unlawful employment practice for an employer:

    (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin;

66. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, for relief based upon the unlawful employment practices of the above-named Defendants. Plaintiff complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's sex.

67. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e et seq., by discriminating against Plaintiff as set forth herein.

## AS A SECOND CAUSE OF ACTION FOR
## DISCRIMINATION UNDER TITLE VII
## (Not Against Individual Defendant)

68. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

69. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because she has opposed any practice made an unlawful employment practice by this subchapter, or because she has made a charge, te

## AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
### (Not Against Individual Defendants)

70. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

71. The Administrative Code of City of NY § 8-107 [1] provides that "It shall be an unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

72. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(l)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiff as set forth herein.

## AS A FOURTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
### (Not Against Individual Defendants)

73. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

74. The New York City Administrative Code Title 8, §8-107(l)(e) provides that it shall be unlawful discriminatory practice: "For an employer… to discharge … or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter..."

75. Each of the Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(l)(e) by discriminating against the Plaintiff because of Plaintiffs opposition to the unlawful employment practices of Plaintiffs employer.

### AS A FIFTH CAUSE OF ACTION FOR
### DISCRIMINATION UNDER THE
### NEW YORK CITY ADMINISTRATIVE CODE
### (As Against Individual Defendants)

76. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

77. New York City Administrative Code Title 8-107(19) Interference with protected rights. It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section.

78. Defendants violated the section cited herein as set forth.

### AS A SIXTH CAUSE OF ACTION FOR
### DISCRIMINATION UNDER THE
### NEW YORK CITY ADMINISTRATIVE CODE
### (As Against Individual Defendants)

79. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

80. The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

81. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

### AS A SEVENTH CAUSE OF ACTION FOR
### DISCRIMINATION UNDER THE
### NEW YORK CITY ADMINISTRATIVE CODE
### (Not Against Individual Defendants)

82. Plaintiff repeats, reiterates and realleges each and every allegation made in the above

paragraphs of this Complaint as if more fully set forth herein at length.

83. New York City Administrative Code Title 8-107(13) Employer liability for discriminatory conduct by employee, agent or independent contractor.

   a. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

   b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:
   (1) the employee or agent exercised managerial or supervisory responsibility; or

   (2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

   (3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

84. Defendants violated the section cited herein as set forth.

**AS AN EIGHTH CAUSE OF ACTION
FOR DISCRIMINATION UNDER
STATE LAW
(Not Against Individual Defendants)**

85. Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice: "(a) For an employer or licensing agency, because of an individual's age, race, creed, color, national

origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

86. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff as set forth herein.

87. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

### AS A NINTH CAUSE OF ACTION FOR DISCRIMINATION UNDER STATE LAW
### (As Against Individual Defendants)

88. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

89. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice:

> For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

90. Defendants engaged in an unlawful discriminatory practice by discharging, retaliating, and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

### AS A TENTH CAUSE OF ACTION FOR DISCRIMINATION UNDER STATE LAW
### (As Against Individual Defendants)

91. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

92. New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory

practice:

> "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

93. Defendants engaged in an unlawful discriminatory practice in violation of New York State Executive Law §296(6) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

**AS AN ELEVENTH CAUSE OF ACTION
FOR NEGLIGENCE-NEGLIGENT
HIRING/TRAINING/RETENTION/SUPERVISION
(As Against Company Defendants)**

94. Plaintiff hereby incorporates by reference all preceding paragraphs as if fully set forth herein.

95. Defendants owed Plaintiff a legal duty of care. Defendants placed their employees in a position to cause foreseeable harm which the Plaintiff would have been spared had the Defendants taken reasonable care in supervising or retaining the employees.

96. The Defendants knew or should have known of their employees' propensity for the conduct that caused the injury.

97. But-for the Defendants' breach of duty owed to Plaintiff, and Plaintiff's detrimental reliance thereon, Plaintiffs would not have suffered the harm alleged herein.

98. Defendants were negligent in the hiring, training, supervision and retention of said employees.

99. As a direct and proximate cause of Defendants' wrongful conduct, Plaintiff has suffered and will continue to suffer emotional distress, mental anguish, and other damages for which they are entitled to compensatory, equitable and other lawfully available relief in an amount to be proven at trial.

## AS A TWELTH CAUSE OF ACTION
## FOR COMMON LAWNEGLIGENCE
## (As Against Company Defendants)

100. Plaintiff repeats and realleges each and every allegation contained in the proceeding paragraphs of the Complaint as set forth at length herein.

101. At all times relevant hereto, Company Defendants owed a reasonable duty of care to Plaintiff Jane Doe inside of Defendants' establishment.

102. Defendants breached said duty to Plaintiff Jane Doe by (i) failing to take remedial and preventative measures against management so as to stop unlawful behavior, , (iii) failing to take reasonable actions, by removing hostility in the work environment and (iv) failing to discipline managers and/or remove them after numerous complaints of sexual harassment and other forms of discrimination.

103. As a direct and proximate result of the Defendants' negligence, the Plaintiff sustained actual physical injuries and psychological injuries for which Plaintiff claims damages in an amount to be determined at trial.

## AS A THIRTEENTH CAUSE OF ACTION
## FOR ASSAULT & BATTERY-As Against Individual Defendant Carlos

104. Plaintiff repeats and realleges each and every allegation contained in the proceeding paragraphs of the Complaint as set forth at length herein.

105. Under New York law, assault is the (i) intentional placing (ii) of another person (iii) in reasonable apprehension (iv) of imminent harmful and offensive contact. See United Nat. Ins. Co. v. Waterfront N.Y. Realty Corp., 994 F.2d 105, 108 (2d. Cir. 1993).

106. Under New York law, as a result of the assault, Defendant commits a battery when (i) there was bodily contact, (ii) the contact was offensive and (iii) the Defendant intended to make the contact.

107. Defendant Carlos intentionally placed Plaintiff DIMAURO in reasonable apprehension

of imminent harmful and offensive physical contact.

108. Defendant Carlos did in fact sexually assault, grope, grab, hold down and force himself onto the Plaintiff, which in fact caused injury to the Plaintiff.

109. Defendant Carlos committed assault and battery and is liable to the Plaintiff for his injuries, for which Plaintiff claims damages in an amount to be determined at trial.

110. Plaintiff Jane Doe invokes the tolling statute regarding the above claim.

## AS AN FOURTEENTH CAUSE OF ACTION
## FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS-As Against Individual Defendant Carlos

111. Plaintiff repeats and realleges each and every allegation contained in the proceeding paragraphs of the Complaint as set forth at length herein.

112. Under New York law, Intentional Infliction of Emotional distress requires: (i) extreme and outrageous conduct, (ii) intent to cause severe emotional distress, (iii) a causal connection between the conduct and the injury, and (iv) severe emotional distress." Bender v. City of New York, 78 F.3d 787, 790 (2d Cir. 1996). "[L]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Howell v. New York Post Co., 81 N.Y.2d 115, 122, 596 N.Y.S.2d 350, 612 N.E.2d 699 (N.Y. 1993).

113. Defendant Carlos violated New York law and did intentionally inflict emotional distress on the Plaintiff, when by extreme and outrageous conduct he (i) intentionally forced the Plaintiff to commit sexual acts and (ii) intentionally physically assaulted the Plaintiff after committing such acts, which caused physical injury and emotional distress upon the Plaintiff.

114. Defendant Carlos' criminal and unlawful behavior was so outrageous in character and extreme in degree so as to go beyond all possible bounds of decency in a civilized

society.

115. Defendant Carlos is liable to the Plaintiff for Intentional Infliction of Emotional Distress in which Plaintiff Jane Doe claims damages in an amount to be determined at trial.

**AS A FIFTEENTH CAUSE OF ACTION
UNDER N.Y.C. ADMINISTRATIVE CODE 8-903-6 ALSO KNOWN AS THE
GENDER-MOTIVATED VIOLENCE ACT ("GMVA")-As Against Individual
Defendant Carlos**

116. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs of the Complaint as set forth at length herein.

117. In relevant part, the GMVA, N.Y.C. Code 8-904 provides, "[A]ny person claiming to be injured by an individual who commits a crime of violence motivated by gender as defined in section 8-903 of this chapter, shall have a cause of action against such individual."

118. Section 8-903 defined "crime of violence" as "an act or series of acts that would constitute a misdemeanor or felony against the person as defined in state or federal law…if the conduct presents a serious risk of physical injury to another, whether or not those acts have actually resulted in criminal charges."

119. Section 8-903 also provides that such an act is "motivated by gender" if it is "committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender."

120. In this case, Defendant Carlos (i) committed an act that constituted a misdemeanor and/or felony when he first groped the Plaintiff's private parts without consent, in a series of events, which led to Defendant Carlos physically assaulting the Plaintiff and causing physical injuries to the Plaintiff. Defendant Carlos' acts were committed on account of the Plaintiff's gender, as no similarly situated male would have been

subjected to such acts, especially considering the nature of the unlawful acts which occurred.

121. Defendant Carlos is liable to the Plaintiff under the GMVA in which Plaintiff Jane Doe claims damages in an amount to be determined at trial.

**WHEREFORE**, Plaintiff demands the following relief jointly and severally against all Defendants:

(a) a declaration that Defendants violated Plaintiff's federal and state civil rights;

(d) compensatory damages for the injuries suffered by Plaintiff by reason of Defendants' unlawful and unjustified conduct, in an amount just and reasonable and in conformity with the evidence at trial in an amount to be determined at trial;

(c) punitive damages against the individual Defendants assessed to deter such intentional and reckless deviations from well-settled constitutional standards, to the extent allowable by law;

(d) damages for emotional distress, lost wages, back pay, front pay, statutory damages, medical expenses, interest;

(d) reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and all other applicable laws; and

(e) such other and further relief as appears just and proper.

Dated: New York, NY
May 12, 2021

                              **L& D Law, P.C.**
                              *Liggieri & Dunisha*

                              __/s/_____
                              Paul Liggieri, Esq.
                              11 Broadway, Suite 615
                              New York, NY 10004
                              (212) 374-9786
                              *Attorneys for Plaintiff*